**Joseph A. TORCISE, Jr., d/b/a Joe Torcise Farms and Tijodee Farms, Plaintiff,**

v.

**COMMUNITY BANK OF HOMESTEAD, Defendant.**

**Bankruptcy No. 91–174–CIV.**

United States District Court,
S.D. Florida.

Aug. 15, 1991.

**504**

Fine Jacobson Schwartz Nash, Block & England, Robert C. Gilbert, Miami, Fla., for plaintiff.

Robert Michael Hustead, Marcus & Marcus, P.A., Homestead, Fla., for defendant.

## ORDER WITHDRAWING REFERENCE FROM BANKRUPTCY COURT

NESBITT, District Judge.

THIS CAUSE comes before the Court upon the motion of Defendant, Community Bank of Homestead ("Bank"), to withdraw the reference from the bankruptcy court and Plaintiff's motion to strike the jury demand.[1] After the issues were thoroughly briefed, the Court entertained oral argument on the motions. The motions raise two issues which have not been decided by the United States Court of Appeals for the Eleventh Circuit: 1) whether the Defendant, which has not filed a claim with the bankruptcy court, is entitled to a jury trial on preference and equitable subordination claims, and 2) whether the bankruptcy court can hold a jury trial on the claims raised in the complaint.

---

[1]. In *Growers Packing Company v. Community Bank of Homestead*, 91–175–Civ–Kehoe (S.D.Fla. July 30, 1991), the Honorable James W. Kehoe issued a thorough and comprehensive opinion on claims nearly identical to the ones before this Court today. This Court agrees with much of that opinion and reaches almost identical conclusions on the issues presented. Section A of the analysis below follows Judge Kehoe's opinion closely, but in Section B, the analyses diverge somewhat.

## I. FACTS

The Plaintiff, Joseph A. Torcise, Jr., is the debtor-in-possession of the bankruptcy estate pursuant to Chapter 11 of the Bankruptcy Code. On December 12, 1990, Plaintiff filed a four-count complaint against the Defendant to set aside fraudulent conveyances, pursuant to 11 U.S.C. § 548(a)(1) and (2) and Fla.Stat. § 726.01, to recover a preference, pursuant to 11 U.S.C. § 547, and for equitable subordination, pursuant to 11 U.S.C. § 510(c)(1). On January 7, 1991, the Defendant, which has not filed a claim with the bankruptcy court, demanded a jury trial as to all claims. On January 25, 1991, the Defendant moved this Court to withdraw the reference from the bankruptcy court as to these four counts, arguing that only the district court has the authority to conduct jury trials. On February 20, 1991, the Plaintiff moved to strike the jury demand with respect to the preference and equitable subordination claim and opposed Defendant's motion to withdraw the reference.

The Court first addresses below whether the Defendant is entitled to a jury trial on all claims raised in the complaint. The Court then addresses whether the bankruptcy court can conduct the jury trial necessary in this case.

## II. ANALYSIS

### A. Right to Trial By Jury

The Plaintiff argues that Defendant is unentitled to a jury trial on either the preference or equitable subordination claim,[2] claims designated as "core" bankruptcy proceedings under 28 U.S.C. § 157(b)(2), because both are claims in equity which fall outside the strictures of the Seventh Amendment.[3] It is well settled

---

[2]. The Supreme Court in *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), clearly held that the Seventh Amendment right to a jury trial applied to fraudulent conveyance actions, and Plaintiff does not argue that Defendant's demand for a jury trial should be stricken with respect to the fraudulent conveyances counts.

[3]. The Seventh Amendment provides that "[i]n Suits at common law, where the value in controversy shall exceed twenty dollars, the right of trial by jury shall be preserved, and no fact tried

that the Seventh Amendment right to a jury trial applies only to actions in law, not equity. In *Granfinanciera, S.A. v. Nordberg*, 492 U.S. 33, 109 S.Ct. 2782, 106 L.Ed.2d 26 (1989), the Supreme Court addressed whether a fraudulent conveyance action, an action also designated as a "core" bankruptcy proceeding pursuant to 28 U.S.C. § 157(b), was equitable in nature, thereby depriving the litigants of the right to a trial by jury under the Seventh Amendment. The Court rejected the circuit court's opinion that any core proceeding must be equitable in nature because " 'bankruptcy itself is equitable in nature and thus bankruptcy proceedings are inherently equitable.' " 109 S.Ct. at 2788 (quoting *In re Chase & Sanborn Corp.*, 835 F.2d 1341, 1349 (11th Cir.1988)). The Court further rejected the notion that Congress had the power to convert legal claims "magically" into equitable issues and abrogate the right to a jury trial. 109 S.Ct. at 2788, 2795.

■ Rather, the Seventh Amendment requires the application of a twofold test to determine whether an action is equitable or legal in nature: " 'First, we compare the statutory action to the 18th-century actions brought in the courts of England prior to the merger of the courts of law and equity. Second, we examine the remedy sought and determine whether it is legal or equitable in nature.' " *Id.* at 2790 (quoting *Tull v. United States*, 481 U.S. 412, 107 S.Ct. 1831, 1835, 95 L.Ed.2d 365 (1987) (citations omitted)). If it is determined that the claim is legal in nature, then the case must be tried before a jury, with one exception. When the claim involves a "public right," that is,

either a right against the federal government or a right created by Congress inextricably tied to a public regulatory scheme, the Seventh Amendment does not apply—if Congress has assigned the cause to a court of equity or administrative tribunal. *Id.* at 2790 n. 4, 2794–2796.[4]

In this case, Plaintiff seeks only monetary relief with respect to its preference claim. Thus, the remedy sought is indisputably legal in nature. Nor need this Court dig deep into the past to uncover the legal roots of preference claims. The Supreme Court has recognized that preferential transfer actions were brought at law in England during the late 18th-century. *Id.* at 2790–91. Plaintiff, for his part, fails to explain why a preference action is equitable rather than legal in nature, and he relies on a solitary case which is equally silent about the issue. *See In re Sunco, Inc.*, 113 B.R. 764 (Bankr.S.D.Fla.1990). Plaintiff also fails to argue that the preference claim is a public right that falls within the exception outlined above. Thus, in light of *Granfinanciera*, the Court must conclude that the preference action is a legal claim in which the Seventh Amendment right to a jury trial inheres, and must deny Plaintiff's motion to strike the demand for a jury trial on this issue. *See also In re United Missouri Bank of Kansas City, N.A.*, 901 F.2d 1449 (8th Cir.1990) (Seventh Amendment right to jury trial in action for preference.)

With respect to the equitable subordination issue, Defendant has admitted that it is a claim in equity. Accordingly, the Court must grant Plaintiff's motion to strike the demand for jury trial on the equitable subordination count.[5]

by jury, shall be otherwise re-examined in any Court of the United States, than according to the rules of the common law."

4. With respect to actions arising from the filing of a bankruptcy petition, the nature of the right at issue may change from a private right into a public right if the defendant has filed a claim with the bankruptcy court. Although the Supreme Court has not issued a definitive opinion regarding this matter, it has been suggested that once a claim has been filed, the issue becomes one of public right concerning the "restructuring of debtor-creditor relations, which is at the core of federal bankruptcy power...." *North-*

*ern Pipeline Construction Co. v. Marathon Pipe Line Co.*, 458 U.S. 50, 102 S.Ct. 2858, 2871, 73 L.Ed.2d 598 (1982). The Court has definitively held, however, that if a claim is filed, and "the issue arises as a part of the process of allowance and disallowance of claims, it is triable in equity." *Katchen v. Landy*, 382 U.S. 323, 86 S.Ct. 467, 476, 15 L.Ed.2d 391 (1966).

5. This decision does not, however, determine whether the Court should withdraw the reference with respect to all four counts. This issue is discussed further below.

**B. Withdrawal of the Reference**

■ *Granfinanciera* explicitly refrained from addressing the extent of the statutory and constitutional authority for the bankruptcy courts to hold jury trials. 109 S.Ct. at 2802. Subsequent to *Granfinanciera*, the circuit courts, as well as the lower courts, have reached different conclusions concerning whether the bankruptcy courts can conduct jury trials in cases such as the one before the Court. *See In re Kaiser Steel Corporation*, 911 F.2d 380 (10th Cir. 1990); *In re United Missouri Bank of Kansas City, N.A.*, 901 F.2d 1449 (8th Cir. 1990) (bankruptcy court cannot hold jury trial); *In re Ben Cooper, Inc.*, 896 F.2d 1394 (2d Cir.1990) (bankruptcy court can hold jury trial).[6] The United States Court of Appeals for the Eleventh Circuit has not yet decided this issue. To determine whether the bankruptcy court has authority to conduct the jury trial, the Court first turns to the provisions of the Bankruptcy Amendments and Federal Judgeship Act of 1984 ("1984 Amendments").

**1. Express Authority**

Title 28, U.S.C. § 1411(a) provides that "this chapter and title 11 do not affect any right to trial by jury that an individual has under applicable non-bankruptcy law with regard to a personal injury or wrongful death tort claim." Section 1411(b), however, provides that the "district court may order the issues arising under section 303 of title 11 [involuntary cases] to be tried without a jury." Neither of these sections addresses the jury trial issue directly, and the implications of the two provisions are inconsistent and inconclusive. As stated by the Supreme Court, the net effect of these two provisions is "notoriously ambig-

uous." *Granfinanciera*, 109 S.Ct. at 2789 n. 3. Moreover, although 28 U.S.C. § 157(b) gives the bankruptcy courts the power to "hear and determine" core proceedings, it does not expressly authorize the bankruptcy courts to conduct jury trials. *See, e.g., In re United Missouri Bank of Kansas City, N.A.*, 901 F.2d 1449, 1454 (8th Cir.1990). The Court must therefore determine whether there is implied authority for the bankruptcy courts to hold jury trials.

**2. Implied Authority**

The Court will look to two sources to determine whether the requisite implied authority exists: 1) the legislative history of the act, *see Missouri Bank*, 901 F.2d at 1454, and 2) the general framework of the Bankruptcy Act. *See In re Ben Cooper*, 896 F.2d 1394, 1402 (2d Cir.1990). Turning to the legislative history of the 1984 Amendments, the Court finds it nearly as ambiguous as 28 U.S.C. § 1411 regarding the bankruptcy courts' authority to hold jury trials. *See Granfinanciera*, 109 S.Ct. at 2789 n. 3 (legislative history "confused"); *Missouri Bank*, 901 F.2d at 1455 ("The legislative history of the 1984 Act ... not particularly illuminating....").[7] In short, the legislative history of the 1984 Amendments contains no substantial support for the proposition that the bankruptcy court can conduct a jury trial.

Despite the indeterminate legislative history, in *In re Ben Cooper, Inc., supra*, the United States Court of Appeals for the Second Circuit held that the authority to conduct jury trials must be implied from the structure of the 1984 Amendments. The court first recognized that under 28

---

**6.** Other courts have held that the bankruptcy court cannot hold a jury trial in a non-core proceeding because such proceedings would be subject to *de novo* review by the district court in violation of the Seventh Amendment. *See, e.g., In re Cinematronics, Inc.*, 916 F.2d 1444 (9th Cir.1990). These cases, however, are irrelevant to the case before the Court, which involves core proceedings.

**7.** Much of the legislative history suggests that Congress never contemplated that jury trials would be required in proceedings designated as

core under § 157(b)(2). *See* H. Conf.R. No. 882, 98th Cong. (Statement of Rep. Kastenmeier), *reprinted in* 1984 U.S.Code Cong. & Admin.News 576, 579–80 (affirming desirability of one forum for adjudication of parts of bankruptcy case, and noting that district court could hold jury trial in the rare instances that litigants insist on jury trial in personal injury or wrongful death cases); *see also Missouri Bank*, 901 F.2d at 1456 ("we doubt if [Congress] considered the need to provide authority for the bankruptcy court to conduct a jury trial.").

U.S.C. § 157(b), bankruptcy judges may "hear and determine" all core proceedings. 896 F.2d at 1402. The Second Circuit then reasoned that although after *Granfinanciera* certain core proceedings must be tried before a jury, congressional intent regarding the bankruptcy judges' power to "hear and determine" these matters remained unchanged. *Id.* Therefore, the court found that the authority to conduct jury trials must be implied to effect congressional intent. *Id.*

The Court finds this argument persuasive, but believes it must, for the reasons stated below, reject the Second Circuit's position and follow the decision the United States Court of Appeals for Eighth Circuit in *Missouri Bank.* Clearly, the result reached in *Ben Cooper* is correct to the extent that trying such matters in the district courts would fail to effect the intent of Congress to create one forum for adjudicating bankruptcy matters and increase the efficiency of bankruptcy proceedings.[8] More to the point, however, is that there is no evidence that Congress ever intended the bankruptcy courts to conduct jury trials. This authority should not be implied from the framework of the 1984 unless it is "indispensable to bankruptcy judges' ability to execute the authority conferred by the 1984 Act." *Missouri Bank,* 901 F.2d at 1456. The Court finds that the authority to conduct jury trials is not indispensable, that § 157(b) can be read to give bankruptcy judges the authority to "hear and determine" only core proceedings that do not require a jury trial.

8. *See* footnote 6, *supra.*

9. In *Ben Cooper,* the court decided that an action by the debtor-in-possession against an insurance company for declaratory judgement and against the insurance brokers for negligence was a core proceeding under 28 U.S.C. § 157(b)(2)(A), and that applying the analysis in *Northern Pipeline Construction Co. v. Marathon Pipe Line Co.,* 458 U.S. 50, 102 S.Ct. 2858, 73 L.Ed.2d 598 (1982), the action fell outside that set of cases which must be adjudicated in an Article III court. 896 F.2d at 1403. The decision that no constitutional problem existed with respect to the bankruptcy court rendering a final judgment in that proceeding led the court

Moreover, to read § 157(b) to authorize the bankruptcy court to hear cases such as the one before the Court raises difficult constitutional issues. As stated by the Eleventh Circuit, "[the] recent decision in *Granfinanciera, S.A. v. Nordberg,* ... appeared to adopt the analysis of the *Northern Pipeline* plurality, and cast doubt on the constitutionality of the bankruptcy courts' authority under § 157(b), to adjudicate certain core proceedings without the parties' consent.... The Court also strongly suggested—although it specifically avoided holding—that fraudulent-conveyance and voidable-preference actions under 11 U.S.C.A. §§ 547–548 are "private-right" claims which 'must be tried under the auspices of an Article III court.'" *In re Davis,* 899 F.2d 1136, 1140 n. 9 (11th Cir. 1990) (quoting *Granfinanciera,* 109 S.Ct. at 2796.).

■ Unlike the court in *Ben Cooper,* this Court is unprepared to rule on the constitutionality of an Article I bankruptcy court entering a final judgment in this proceeding, when the Defendant has not filed a claim in bankruptcy.[9] The Court is mindful that "[i]t is settled policy to avoid an interpretation of a federal statute that engenders constitutional issues if a reasonable alternative interpretation poses no constitutional question." *Gomez v. United States,* 490 U.S. 858, 109 S.Ct. 2237, 2242, 104 L.Ed.2d 923 (1989) (citations omitted). Thus, like the Eighth Circuit in *Missouri Bank,* this Court interprets the "hear and determine" provisions of § 157(b) to apply to bankruptcy judges only when there is no Seventh Amendment right to a jury trial.

to conclude that a jury verdict in bankruptcy also did not violate Article III, since jury trials pose no constitutional problem independent of the court's ability to enter a final judgment. *Id.* As stated by another court, "Jury trials are one of many methods or techniques that a court has to resolve factual disputes and there appears no reason in logic or policy ... that there is something suspicious about a Bankruptcy Court using that technique...." *In Re Great American Manufacturing and Sales, Inc.,* 129 B.R. 633, 637 (C.D.Cal. 1991). This Court, however, need not reach the issue of when a jury trial might be available in bankruptcy consistent with the Constitution, for the reasons stated in the text.

The Court therefore holds, consistent with its interpretation of the 1984 Amendments, that in this case the bankruptcy court cannot conduct a jury trial on Plaintiff's claims.

## CONCLUSION

Accordingly, the Court

ORDERS AND ADJUDGES that the Plaintiff's motion to strike the demand for jury trial is GRANTED IN PART for the reasons set forth above. The Court strikes Defendant's motion for a jury trial on the equitable subordination issue. The Court further GRANTS IN PART the Defendant's motion to withdraw the reference with respect to the fraudulent conveyance and preference claims as Defendant is entitled to a jury trial on these issues.[10] If there are any remaining matters which must be adjudicated by the district court after all pre-trial matters, including discovery and pre-trial motions, have been addressed by the bankruptcy court consistent with the full extent of its powers under the 1984 Bankruptcy Amendments and the Constitution, the Court shall place this cause on its trial calendar.

■ The Court further WITHDRAWS IN PART the reference with respect to the

equitable subordination claim, because it may share common issues of fact with the fraudulent conveyance and preference claims. Where the equitable and legal claims are so intertwined, the jury must determine the legal issues before the court can rule on the equitable claims. *See, e.g., Lytle v. Household Manufacturing, Inc.,* 494 U.S. 545, 110 S.Ct. 1331, 1335–36, 108 L.Ed.2d 504 (1990); *Dairy Queen, Inc. v. Wood,* 369 U.S. 469, 82 S.Ct. 894, 900–01, 8 L.Ed.2d 44 (1962). In this case, the Court finds that it would be most expedient to submit all claims simultaneously to the jury and the judge in the district court. As set forth in the preceding paragraph, the bankruptcy judge will resolve all matters, including issues arising from the equitable subordination claim, until such time as it may be necessary to submit this claim to a jury.

DONE AND ORDERED.

---

**10.** Title 28 U.S.C. § 157(d) gives the district court broad discretion to withdraw the reference "in whole or in part," for cause shown.